IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RAUL DORADO, | )<br>) |
| Petitioner, | )<br>) |
| | ) No. 10 C 2708 |
| v. | )<br>) The Honorable William J. Hibbler |
| DAVE REDNOUR, Warden,<br>Menard Correctional Center, | )<br>)<br>) |
| Respondent. | ) |

## MEMORANDUM OPINION AND ORDER

Raul Dorado seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He bases his petition on two grounds: (1) errors the state trial court made in conducting *voir dire* during his criminal trial; and (2) ineffective assistance of counsel during his criminal trial. For the following reasons, the Court DENIES Dorado's petition.

**I.   Background**

On December 14, 1999, following a trial of Petitioner Dorado and two co-defendants in the Circuit Court of Cook County, Illinois, a jury found Dorado guilty of two counts of first degree murder and two counts of aggravated kidnapping. On January 26, 2000, the trial court denied his motion for a new trial and sentenced him to two terms of life imprisonment and two terms of 15 years' imprisonment, all to be served concurrently.

Dorado appealed his conviction. Two of the arguments he raised on appeal are relevant here. First, he argued that errors of the trial court, made during jury selection, were an abuse of discretion that denied Dorado access to a fair and impartial jury. Second, he argued that his trial counsel was ineffective for a number of reasons. The trial court denied his appeal, and the

1

Illinois Supreme Court denied his Petition for Leave to Appeal, which was based only on the errors of the trial court during jury selection.

Dorado then filed a post-conviction petition for relief from judgment in state court. In his petition, he once again raised concerns regarding the effectiveness of his trial counsel. After an evidentiary hearing, the trial court denied his petition. The state appellate court denied his appeal of the petition. Finally, the Illinois Supreme Court denied his petition for leave to appeal. Dorado now seeks relief from this court under 28 U.S.C. § 2254.

Dorado was convicted of the murder of two gang members. He and his co-defendants were also gang members. During *voir dire*, one potential juror admitted that he would be more likely to find a defendant guilty if he or she were a gang member. He also stated that he would likely be prejudiced against a defendant who did not testify at trial. A second potential juror said that she felt that the defendants were probably guilty, in part due to their gang affiliation. Dorado attempted to use cause challenges to strike these two jurors, but the judge denied his request. So, he used two of his peremptory challenges instead. Later, when Dorado no longer had any peremptory challenges remaining, he was unable to strike a juror whose grandfather had recently been murdered. The person accused of her grandfather's murder was on trial at the same time as Dorado, and the cases were being prosecuted by the same State's Attorney's Office. Dorado claims that the trial court erred in denying his cause challenges of the first two potential jurors, and that it resulted in an unconstitutionally biased jury because he was unable to strike the juror whose grandfather had been murdered.

Dorado also claims that his trial counsel made a number of errors, which, when viewed cumulatively, amount to ineffective assistance of counsel. He focuses mostly on counsel's alleged failure to properly present an alibi defense. At trial, Dorado's counsel relied on the

2

theory that Dorado was not likely to have participated in a murder in the late-night hours of April 2 or early morning hours of April 3 (when the murders took place), because he had a job interview early on the morning of April 3 and a drug-test relating to that interview that afternoon. He presented a stipulation at trial that Dorado had the interview scheduled and that he had attended the drug-test. However, he did not mention this theory during closing, and he did not present any witnesses to testify as to Dorado's whereabouts during the hours when the murders were actually committed. At the evidentiary hearing during his state post-conviction proceedings, Dorado presented two witnesses, his mother and girlfriend, who provided such testimony. His mother testified that he had been at home on the night of April 2 until about 9 p.m., when he left to go to his girlfriend's house. She also testified that he returned home at about 2 a.m. on April 3, that she saw him in his room at 4:30 or 4:45 a.m. when she woke up and reminded him of his job interview, and that she called him at home and reminded him again at around 6 a.m. His girlfriend testified that he had been at her house from about 11 p.m. on April 2 until 1 or 2 a.m. the next morning.

In addition to this alibi testimony, Dorado also claims that his lawyer made a few other errors. First, he claims his counsel failed to properly cross-examine Lorena Bueno, the only witness who placed him at the site of the murders. However, while he does explain certain parts of Ms. Bueno's testimony that might undermine her credibility, he does not explain the alleged deficiencies in counsel's cross-examination. Second, he claims that counsel failed to investigate whether there was in fact a gang meeting prior to the murders that Dorado attended, where the murders were planned. He claims that if he had, he would have discovered witnesses who would have testified that the meeting never took place. Finally, he briefly mentions that his counsel

3

used the term "homicide" during his opening statements despite a motion *in limine* precluding use of the term.

## II. Analysis

Dorado now bases his § 2254 petition on the issues he raised in his direct appeal and in the collateral state proceedings. Respondent presents a number of arguments for why the Court should deny Dorado's petition. First, he argues that Dorado has procedurally defaulted his claims regarding jury selection. Second, he argues that Dorado has procedurally defaulted some of his ineffective assistance of counsel claims as well. Third, he argues that Dorado's remaining ineffective assistance of counsel claims fail on the merits. Finally, he argues that if the Court denies Dorado's petition, it should also deny him a certificate of appealability.

### A. Procedural default of the claims regarding errors during *voir dire*

Respondent does not deny that Dorado presented claims regarding the trial court's alleged errors during *voir dire* all the way through one round of state appellate review. His argument that Dorado procedurally defaulted the constitutional claims he brings now rests instead on his assertion that Dorado did not present the same claims during that state review. Respondent argues that Dorado's arguments in his initial appeal failed to raise a constitutional claim. Instead, he argues, Dorado presented his claims in the context of state law regarding an abuse of discretion by the trial court.

Before seeking federal habeas relief, a petitioner must give the State an "opportunity to pass upon and correct" violations of a petitioner's federal rights by "fairly presenting" claims of these violations in each appropriate state court. *Baldwin v. Reese*, 541 U.S. 27, 29, 124 S. Ct. 1347, 1349, 158 L. Ed. 2d 64 (2004) (internal citations omitted). Any claims a petitioner fails to bring through one full round of state review are procedurally defaulted. *Lockheart v. Hulick*, 443

F.3d 927, 929 (7th Cir. 2006). "Presenting a federal claim for the first time in a petition for discretionary review by a state's highest court will not satisfy the fair presentment requirement." *Wilson v. Briley*, 243 F.3d 325, 328 (7th Cir. 2001). Thus, in order to avoid procedural default, Dorado had to present his constitutional claim to the Illinois appellate court. *Id.* Procedural default bars review absent a showing of cause for the default and actual prejudice resulting therefrom. *Gray v. Netherland*, 518 U.S. 152, 162, 116 S. Ct. 2074, 2080, 135 L. Ed. 2d 457 (1996). The only issue in this case is whether Dorado procedurally defaulted his claim because he does not argue that he has met this standard for excusing default. In order to determine whether Dorado's arguments to the state appellate court presented a federal constitutional claim, the Court must analyze four factors: "(1) whether the petitioner relied on federal cases that engage in constitutional analysis; (2) whether the petitioner relied on state cases which apply a constitutional analysis to similar facts; (3) whether the petitioner framed the claim in terms so particular as to call to mind a specific constitutional right; and (4) whether the petitioner alleged a pattern of facts that is well within the mainstream of constitutional litigation." *Wilson*, 243 F.3d at 327.

Dorado concedes that he did not rely on federal cases in his original appeal. However, he argues that he satisfies the remaining three factors. He points out that the state cases he relied upon do engage in federal constitutional analysis. *See, e.g., People v. Strain*, 306 Ill. App. 3d 328, 334, 714 N.E.2d 74, 78 (Ill. App. Ct. 1999), *aff'd*, 194 Ill. 2d 467, 742 N.E.2d 315 (2000) (both courts referencing constitutional right to a fair and impartial jury). He also notes that in his original appeal, he referenced his right to a fair trial free of prejudice, his right to a fair and impartial jury, and his concerns regarding jurors who were biased or unable or unwilling to be impartial. He points out that the Seventh Circuit has relied on similar references in finding that a

5

petitioner framed his claims in terms particular enough as to call to mind a specific constitutional right. *See Verdin v. O'Leary*, 972 F.2d 1467, 1480 (7th Cir. 1992) (finding references to the right to a "fair trial" and the right "to be present at critical steps of [the] trial" to be sufficient).

Finally, Dorado argues that he alleged a pattern of facts that is well within the mainstream of constitutional litigation. He points to Supreme Court precedent suggesting that if the use of peremptory challenges to cure trial court errors ultimately results in a biased jury sitting, the Sixth Amendment is violated. *See United States v. Martinez-Salazar*, 528 U.S. 304, 315-17, 120 S. Ct. 774, 781-82, 145 L. Ed. 2d 792 (2000); *Ross v. Oklahoma*, 487 U.S. 81, 88, 108 S. Ct. 2273, 2278, 101 L. Ed. 2d 80 (1988). Dorado's argument on this point contains a fatal flaw, however. In his initial appeal, Dorado made no mention of the juror whose grandfather had been murdered and who ultimately sat on the jury in his case. Thus, he did not present a pattern of facts that suggested a violation of the type he now claims. Because he alleged no facts supporting a claim that the jury that convicted him was biased as a result of the trial court's errors, Dorado's allegations only supported a claim that the trial court erred in denying him his two earlier cause challenges and thereby forced him to use two of his peremptory challenges. However, that is precisely the sort of claim rejected in the Supreme Court cases Dorado now cites. *See Martinez-Salazar*, 528 U.S. at 315-17, 120 S. Ct. at 781-82; *Ross*, 487 U.S. at 88, 108 S. Ct. at 2278. Thus, he cannot now argue that he gave the Illinois appellate court an opportunity to "pass upon and correct" the constitutional violation he complains of here.

For this reason, the Court holds that Dorado procedurally defaulted his claim regarding *voir dire*, and denies his petition insofar as it relies on that claim.

## B. Ineffective assistance of counsel claims

Respondent also argues that Dorado procedurally defaulted some of his claims of ineffective assistance of counsel. In is initial direct appeal, Dorado raised his complaints about trial counsel's ineffective cross-examination of Ms. Bueno and counsel's reference to a homicide in the opening statement. However, he abandoned those claims in his petition for leave to appeal to the Illinois Supreme Court. Thus, Respondent argues that the Court should only address the merits of Dorado's claims regarding his counsel's failure to properly pursue the alibi theory and counsel's failure to investigate the alleged gang meeting. Dorado responds by noting that the claim he presented to the state courts during his post-conviction proceedings, and the claim he presents to this court now, is that Dorado's trial counsel's performance, when viewed as a whole, is constitutionally deficient. Thus, he argues that the fact that he may have procedurally defaulted claims based on specific individual errors is irrelevant.

Dorado does not cite any caselaw in support of this argument. On the other hand, Respondent cites *Pole v. Randolph*, 570 F.3d 922, 934-35 (7th Cir. 2009), for the proposition that even though "[i]neffective assistance of counsel is a single ground for relief no matter how many failings the lawyer may have displayed" and courts "assess counsel's work as a whole," "if a petitioner fails to assert in the state courts a particular factual basis for the claim of ineffective assistance, that particular factual basis may be considered defaulted." *Id.* (internal quotations omitted). However, in that case, the petitioner never presented certain factual bases to the state courts. *Id.* In this case, Dorado did present all of his claims through an entire round of state court review during his post-conviction proceedings.[1] Thus, the state courts have had a chance

---

[1] According to *Massaro v. United States.* 538 U.S. 500, 509, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003), a petitioner may bring an ineffective assistance of counsel claim in a collateral proceeding whether or not the petitioner could have raised the claim on direct appeal.

7

to rule upon all of these factual bases taken together as a whole, and Dorado has not procedurally defaulted his claim.

Even taking all of Dorado's counsel's alleged failures into account, however, his claim of ineffective assistance of counsel fails on the merits. In order to succeed on the merits, Dorado must pass the test established in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). He must demonstrate that: (1) "counsel's performance fell below an objective standard of reasonable representation under the circumstances;" and (2) "there is a reasonable probability that, but for the errors, the result of the proceedings would have been different." *Id.* at 687-88, 694, 104 S. Ct. at 2064, 2068. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S. Ct. at 2068. Inherent in this test is a high degree of deference to counsel's decisions regarding trial strategy. *Smith v. Gaetz*, 565 F.3d 346, 352-53 (7th Cir. 2009) (quoting *Strickland*). Thus, it is petitioner's burden to "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 353 (quoting *Strickland*). Moreover, in a § 2254 case such as this one, the Court owes additional deference to the state court's application of the *Strickland* test. *Bell v. Cone*, 535 U.S. 685, 688-89, 122 S. Ct. 1843, 1852, 152 L. Ed. 2d 914 (2002). Thus, Dorado must show that the state courts applied *Strickland* in an objectively unreasonable manner. *Id.*

First of all, Dorado provides little, if any, support in his present petition for his argument that his counsel failed to properly cross-examine Bueno. He mentions a number of facts that possibly undermined Bueno's credibility. For instance, he notes that Bueno claimed to have recognized Dorado's voice from the next room on the night of the murders, but she testified that she had her head close to a loud radio with a pillow over her head and the door closed for most

8

of the time she was in the next room. She also claims to have recognized Dorado by sight and voice despite the fact that she may not have seen or heard him for over five years. That would mean that Bueno had not seen or heard him since he was thirteen years old. These facts may undermine Bueno's credibility in identifying Dorado at the alleged scene of the crime, but they were all elicited during her cross-examination, either by Dorado's counsel, or by counsel for one of his co-defendants. Thus, it is not clear from Dorado's petition why his counsel's cross-examination of Bueno was deficient.

Second, Dorado barely even references his counsel's reference to the term "homicide" in his opening statement. While use of the term was precluded by a motion *in limine*, and the Court may conclude that this was therefore an error on the part of Dorado's counsel, it is hard to infer much regarding the effect of the term on the trial given Dorado's failure to provide any real argument on this point.

Thus, the Court turns to the claims regarding his alibi defense and the evidence of the alleged gang meeting. These are the claims upon which Dorado relies most heavily. First, while Dorado's girlfriend and mother did provide coherent testimony during the post-conviction evidentiary hearing providing for his whereabouts for most of the night during which the murders apparently took place, this does not automatically mean that Dorado's trial counsel erred by failing to call them as witnesses. At the same evidentiary hearing, Dorado's trial counsel testified that when he talked to Dorado's mother before trial, she was "sketchy on the times" when petitioner was home and she "couldn't narrow it down to a specific hour or minute." For this reason, he said he decided not to call her after discussing the matter with Dorado. In fact, he stated that Dorado agreed with his conclusion. He also said that Dorado's girlfriend "didn't appear to be that cooperative" and her testimony could be contradicted by Dorado's statement to

9

the police that, for at least some of the time his girlfriend claimed he was with her, he was elsewhere. The state courts relied on counsel's testimony in finding that Dorado failed to overcome the presumption that counsel's decision not to call Dorado's mother and girlfriend was sound trial strategy. *People v. Dorado*, No. 1-07-2221, slip op. at 7 (Ill. App. Ct. May 14, 2009). This court is not in a better position than the state trial court to assess Dorado's counsel's credibility and, therefore, the Court finds the state court's determination reasonable.

The state courts also denied Dorado's claim that his trial counsel failed him by failing to investigate the state's witness's claim that Dorado was at a gang meeting where the murders were planned, finding that Dorado could not meet the prejudice prong of the *Strickland* test. *Id.* at 9. Dorado presented two fellow gang members at his post-conviction hearing who testified that no such gang meeting ever took place. The Court must consider all of trial counsel's alleged errors as a whole when deciding whether Dorado has met the prejudice prong. However, given that the Court has held that Dorado's counsel did not err in failing to call Dorado's alibi witnesses, this simply means that the Court considers this final claim in conjunction with Dorado's relatively perfunctory claims regarding his counsel's use of the term homicide and failure to properly cross-examine Ms. Bueno. Given Ms. Bueno's testimony that she saw and heard Dorado at the scene of the murders, Dorado cannot show that there is a reasonable probability that, absent these errors, the result of the trial would have been different.

### C. Certificate of appealability

According to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." In order to obtain a certificate of appealability, Dorado must demonstrate that reasonable jurists could find the Court's ruling on his petition

debatable. *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 1604, 146 L. Ed. 2d 542 (2000). When a district court denies a claim because it was procedurally defaulted, the petitioner must demonstrate that the ruling on procedural default is debatable, and that the merits of his underlying claim are debatable. *Id.* Dorado is unable to do so here.

It is quite clear from the record that Dorado failed to present any allegations supporting his argument that the jury at his trial was biased to the state appellate court. Thus, he failed to present that court with the lynchpin of the constitutional claim he attempts to present now. There can be no debate among reasonable jurists that this failure amounted to a procedural default.

Secondly, given the high level of deference the Court must give both to Dorado's counsel and to the state court with regard to his ineffective assistance of counsel claim, there can be no debate as to whether he can base his claim on his counsel's failure to present his alibi witnesses. As a result, Dorado is left pointing to a relatively small set of alleged errors that, even when taken together, are not enough to show prejudice sufficient to meet the standard set in *Strickland*. The Court finds that reasonable jurists would not disagree on this point either.

## CONCLUSION

For the above reasons, the Court DENIES Dorado's petition for a writ of habeas corpus. The Court also DENIES Dorado a certificate of appealability.

IT IS SO ORDERED.

4/7/11
Dated

Hon. William J. Hibbler
United States District Court

11